UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**JUDGE SWAIN**

**12 CV 6501**

---

MPD ACCESSORIES B.V.

                              Plaintiff,

v.

URBAN OUTFITTERS, INC.

and

GMA ACCESSORIES INC. d/b/a CAPELLI
NEW YORK

and

ABC CORPS 1-5

                              Defendants.

Civil Action No. _____

**COMPLAINT**

**JURY TRIAL DEMANDED**



RECEIVED
AUG 24 2012
U.S.D.C. S.D. N.Y.
CASHIERS

---

        Plaintiff MPD Accessories B.V. ("MPD" or "Plaintiff"), by and through its undersigned

counsel, Gusy Van der Zandt LLP, as and for its Complaint for Declaratory and Injunctive Relief

and Damages against Defendant Urban Outfitters, Inc. ("Urban Outfitters") and GMA

Accessories Inc. d/b/a Capelli New York ("Capelli") and ABC Corps 1-5 (Urban Outfitters,

Capelli and ABC Corps 1-5, together referred to as "Defendants"), alleges as follows:

### INTRODUCTION

        1.      Under Section 106 of the Copyright Act, 17 U.S.C. § 101 *et seq.* (the "Copyright

Act"), an author has the distinct, severable, and exclusive right to, among other things,

reproduce, prepare derivative works based upon and to distribute copies of a copyrighted work.

17 U.S.C. §§ 106(1), (2), (3).   Pursuant to the Berne Convention Implementation Act of 1988,

which came into force in the United States on March 1, 1989, the United States was made a

party or signatory to the Berne Convention for the Protection of Literary and Artistic Works,

signed at Berne, Switzerland, on September 9, 1886, and all acts, protocols and revisions thereto (hereinafter referred to the "Berne Convention"), the provisions of which are given effect under the Copyright Act, and any other relevant provision of federal or state law, including the common law.  In brief, the Berne Convention requires its signatories to recognize the copyright of works of authors from other signatory countries, known as members of the Berne Union, in the same way as it recognizes the copyright of its own nationals. The United Kingdom and The Netherlands are members of the Berne Union.

2.     This action arises out of MPD's copyright in certain designs exhibited below which are covered by the Berne Convention, both created in the United Kingdom and/or The Netherlands, and thus protected under the Copyright Act.  Defendants, in violation of Plaintiff's exclusive rights under the Copyright Act, have created and sold and offered for sale products which reproduce identically, or at least almost identically, the copyright protected designs, and/or have created derivative works of same copyright protected designs, and have sold and offered for sale these derivative works, and/or have engaged in acts of unfair competition, for all of which Plaintiff seeks relief from this Court.

## PARTIES

3.     Plaintiff MPD is a private company with limited liability, formed and existing under the laws of The Netherlands, and has an office and principal place of business at Dukdalfweg 49, 1041 BC Amsterdam, The Netherlands.

4.     Upon information and belief, Defendant Urban Outfitters is a publicly traded corporation with over $2 billion of annual revenues, formed and existing under the laws of the State of Pennsylvania, duly registered and authorized to do business in the State of New York as a foreign business corporation.  Urban Outfitters has more than 170 retail store locations worldwide and at least 9 retail store locations in New York County.

5.     Upon information and belief, Defendant Capelli is a private corporation, formed and existing under the laws of the State of New York, and has a principal place of business at 1 East 33rd Street, 9th Floor, New York, NY 10016.

6.     Defendant ABC Corps 1-5 are named because Plaintiff continues to discover parties that have infringed or induced the infringement of Plaintiff's copyrights and/or committed unfair competition.

## JURISDICTION AND VENUE

7.     This is a civil action seeking damages and injunctive relief for copyright infringement under the Copyright Act, 17 U.S.C. § *et seq.*, and declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

8.     This Court has original subject matter jurisdiction over all claims pursuant to 28 U.S.C. § 1331 and 1338(a), and is authorized to declare the rights of the parties pursuant to the Declaratory Judgment Act.

9.     This Court has personal jurisdiction over Defendants.  Urban Outfitters does continuous and systematic business in New York and in this District; and it maintains various retail stores and employs personnel in New York and this District, and is thus physically present in the state. *See* CPLR § 301. Capelli also does continuous and systematic business in New York and in this District; and it maintains its principal office and employs personnel in New York and this District, and is thus physically present in the state. *Id.*  All Defendants have also transacted business within New York and contract to supply goods or service in New York in connection with the matters giving rise to this suit.  *See* CPLR § 302(a)(1).

10.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b), 1391(c), and 1400(a).

## FACTS AND BACKGROUND

### *Plaintiff and Plaintiff's Business*

11.   MPD is the result of the merger in 1999 of Menke, Poelmann and Drontmann, three venerable names in the fashion accessories industry, and is a specialist in creating a large range of its own fashion styles and designs, specifically for accessories including scarves and hats.

12.   As an international market leader in quality and delivery of original accessory designs and products, MPD is headquartered in Amsterdam and has operations around the world, including an office in Hong Kong and a showroom in Shanghai, in addition to its showrooms throughout Europe.   MPD provides its designs to department stores and retail clothing stores, and selectively chooses distributors to preserve the value of its unique designs.

13.   Since 2011, Plaintiff has been doing business with a Florida wholesaler, and to whom Plaintiff has been selling and exporting scarves.  In the U.S. market, and abroad, MPD's products demand a higher price-point in the market, as compared to mass produced/distributed products, because of their unique designs and limited availability.

### *MPD's Stripe Design*

14.   On or around February 7, 2011, MPD purchased a textile with a characteristic block stripe pattern with design number STNC8033 from the English design company Whiston and Wright (W&W), to which MPD added several original combinations of colors and repetition designs (the "Stripe Design").  W&W assigned the intellectual property rights in the pattern to MPD.  A true and correct copy of the Assignment Agreement is attached hereto as **Exhibit A**.

15.   The original and distinctive elements of Stripe Design created by MPD include: (i) a palette of color block stripes; (ii) variegated color combinations and bold and small stripes; (iii) interlinking horizontal and vertical stripes; and (iv) parallel and perpendicular striping.  This original work was, more specifically, created by MPD designer, Corine Kamp, during March

2011 in Amsterdam, The Netherlands, and the first samples of the Stripe Design were produced in house in Amsterdam and approved by MPD on or around May 6, 2011.

16.     MPD used the Stripe Design for scarves, exhibited as follows:



17.     The color block stripes and the specific combinations and ordering of these elements of the Stripe Design make this scarf unique and original, and protected under the Copyright Act.

18.     The Stripe Design was originally published and distributed to the public in Europe by MPD during May 2011, through its wholesale operations, selling the Stripe Design through sales representatives and agents in European department stores and other selectively chosen clothing retailers.

19.   Neither MPD, nor any of its licensees, has published the Stripe Design in the United States, and no license was granted to Urban Outfitters, Capelli, or any other U.S. party.

20.   Products incorporating the Stripe Design have been sold by MPD as recently as in its Spring/Summer collection 2012.

***MPD's Star Design***

21.   One of MPD's most popular designs is the oblong double face lace-wool star scarf (the "Star Design"), which was created by MPD's designer, Corine Kamp, during March 2011, during the course of her employment with MPD in Amsterdam, The Netherlands.   The first samples of the Star Design were produced in house in Amsterdam and approved by MPD on or around April 20, 2011.  MPD used the Star Design for scarves, the design exhibited as follows:



22.   The Star Design incorporates various characteristic and distinguishing features, which demonstrate the original, distinctive and creative work of the designer, and is protected under the Copyright Act.

23.   The Star Design was originally published and distributed to the public in Europe by MPD during or around April 2011, through its wholesale operations, selling the Stripe Design through sales representatives and agents in European department stores and other selectively chosen clothing retailers.

24.   Neither MPD, nor any of its licensees, has published the Stripe Design in the United States, and no license was granted to Urban Outfitters, Capelli, or any other U.S. party.

### Defendants' Willful Infringement of the Stripe Design and the Star Design

25.   Without license, and in violation of the Copyright Act, Urban Outfitters has and continues to sell and offer for sale, through retails stores and/or online, scarves with textile designs that are identical, or at least nearly identical, to the Stripe Design and the Star Design.

26.   On June 20, 2012, MPD purchased a scarf with a textile design identical, or at least nearly identical, to the Stripe Design from Urban Outfitters online (www.urbanoutfitters.com) for a purchase price of $24.00, Item # 24894511.

27.   On June 21, 2012, MPD purchased a scarf with a textile design identical, or at least nearly identical, to the Star Design from Urban Outfitters online (www.urbanoutfitters.com) for a purchase price of $24.00, Item # 25073586.

28.   On July 18, 2012, MPD purchased a scarf with a textile design identical, or at least nearly identical, to the Stripe Design from Urban Outfitters' retail store located at 521 Fifth Avenue, New York, New York, USA for a purchase price of $24.00, Item # 24894511.

29.   On July 18, 2012, MPD purchased a scarf with a textile design identical, or at least nearly identical, to the Star Design from Urban Outfitters' retail store located at 521 Fifth Avenue, New York, New York, USA for a purchase price of $24.00, Item # 25073586.

30.   Upon information and belief, Capelli supplies Urban Outfitters the scarves using textile designs identical, or at least nearly identical, to the Stripe Design and the Star Design.

31.   Defendants are aware of MPD's rights, and MPD has been in contact with Urban Outfitters' United Kingdom affiliate regarding such claims since as early as May 2012, in the form of a cease and desist letter.  Indeed, MPD has also sent various follow-up letters to Urban Outfitters in the United Kingdom during June and July 2012, and has been in communication with Urban Outfitters' lawyers in the United Kingdom and Amsterdam, The Netherlands.

32.   Despite MPD's clear claim, Urban Outfitters has refused to admit that its products infringe upon Plaintiff's rights and continues to sell the infringing products throughout the world in willful disregard of Plaintiff's rights, although companies affiliated with Urban Outfitters have been in settlement discussions with Plaintiff.

**Defendants' Acts of Unfair Competition**

33.   As noted above, MPD is and has been expanding the distribution and licensing of its designs and/or products bearing its designs into the United States through a Florida company, and contact has been made with various other potential business partners to accomplish same.

34.   Due to Defendants' wrongful misappropriation of MPD's copyrighted works, the Stripe Design and Star Design, Plaintiff is wrongly being forced to compete against its own designs in the marketplace because its designs are being illegally copied and distributed to wholesalers, retailers, consumers and others. This is also causing substantial damage to Plaintiff's reputation, goodwill and business efforts.

35.   Defendants conduct is thus a violation of New York common law and N.Y. Gen Bus. Law § 349, and amounts to, *inter alia*, unfair competition.


### CLAIMS FOR RELIEF

### COUNT ONE

(Copyright Infringement against all Defendants – Stripe Design)

36.   Plaintiff hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 35 of this Complaint as if fully set forth herein.

37.   Defendants, without the permission or consent of Plaintiff, and without authority, are producing, selling and offering for sale scarves with textile designs that are identical, or at least nearly identical, to the Stripe Design; Urban Outfitters to consumers through retails stores and/or online, and Capelli to Urban Outfitters as its supplier.

38.   Defendants induced the copyright infringement of Plaintiff's Stripe Design and Star Design by third parties.

39.   Defendants' acts of infringement are and have been willful, intentional, and purposeful, and in disregard of and indifferent to the rights of Plaintiff.

40.   As a direct and proximate result of Defendants' infringement of Plaintiff's copyrights and exclusive rights under copyright, Plaintiff is entitled to its actual damages plus Defendants' profits from infringement pursuant to 17 U.S.C. § 504(b), in an amount to be determined at trial.

41.   Defendants' conduct is causing, and, unless enjoined by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money.   Plaintiff has no adequate remedy at law.   Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction requiring Defendants to employ reasonable methodologies to prevent or limit infringement of Plaintiff's copyrights.

### COUNT TWO

(Copyright Infringement against all Defendants – Star Design)

42.   Plaintiff hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 41 of this Complaint as if fully set forth herein.

43.   Defendants, without the permission or consent of Plaintiff, and without authority, are producing, selling and offering for sale scarves with textile designs that are identical, or at least nearly identical, to the Star Design; Urban Outfitters to consumers through retails stores and/or online, and Capelli to Urban Outfitters as its supplier.

44.   Defendants' acts of infringement are and have been willful, intentional, and purposeful, and in disregard of and indifferent to the rights of Plaintiff.

45.   Defendants induced the copyright infringement of Plaintiff's Stripe Design and Star Design by third parties.

46.    As a direct and proximate result of Defendants' infringement of Plaintiff's copyrights and exclusive rights under copyright, Plaintiff is entitled to its actual damages plus Defendants' profits from infringement pursuant to 17 U.S.C. § 504(b), in an amount to be determined at trial.

47.    Defendants' conduct is causing, and, unless enjoined by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money.  Plaintiff has no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction requiring Defendants to employ reasonable methodologies to prevent or limit infringement of Plaintiff's copyrights.

## COUNT THREE

(Unfair Competition against all Defendants)

48.    Plaintiff hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 47 of this Complaint as if fully set forth herein.

49.    Defendants, without the permission or consent of Plaintiff, and without authority, are producing, selling and offering for sale scarves with textile designs that are identical, or at least nearly identical, to the Stripe Design and the Star Design; Urban Outfitters to consumers through retails stores and/or online, and Capelli to Urban Outfitters as its supplier.

50.    Defendants induced the copyright infringement of Plaintiff's Stripe Design and Star Design by third parties.

51.    Defendants, by their unauthorized appropriation and use of Plaintiff's copyright work, namely the Stripe Design and the Star Design, have and are engaging in acts of unfair competition, unlawful appropriation, unjust enrichment, wrongful deception of the purchasing public, and unlawful trading on Plaintiff's copyrighted works, all to Plaintiff's irreparable harm. Plaintiff has no adequate remedy at law.

52.    Defendants' conduct is and has been willful, intentional, and purposeful, and in disregard of and indifferent to the rights of Plaintiff.

53.   As a direct and proximate result of Defendants' willful and wanton conduct, violations of N.Y. Gen Bus. Law § 349 and the common law, Plaintiff is entitled to treble damages and its costs and reasonable attorneys' fees.

## COUNT FOUR

(Declaratory Judgment against all Defendants)

54.   Plaintiff hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 53 of this Complaint as if fully set forth herein.

55.   Pursuant 28 U.S.C. §§ 2201-2202, Plaintiff is entitled to a declaration of its rights with regard to the copyrights in the Stripe Design and Star Design.

## PRAYER

**WHEREFORE**, Plaintiff MPD respectfully requests that this Court enter a judgment against Defendants as follows:

(a)   For an order requiring Defendants to deliver up to be impounded during this pendency of this action all products bearing infringement of Plaintiff's copyrighted works;

(b)   For a declaration that Defendants' conduct willfully and wantonly infringes Plaintiff's copyrighted works, induced others to infringe Plaintiff's copyrighted and/or constituted unfair competition vis-à-vis the Plaintiff;

(c)   For a permanent injunction requiring that Defendants and their agents, servants, employees, officers, attorneys, successors, licensees, partners, and assigns, and all persons acting in concert or participation with each or any of them, cease directly or indirectly infringing, or causing, enabling, facilitating, encouraging, promoting and inducing or participating in the infringement of, any of Plaintiff's

copyrights or exclusive rights protect by the Copyright Act, whether now in existence or hereafter created;

(d)    For a judgment requiring Defendants to pay Plaintiff such damages as Plaintiff has sustained as a consequence of Defendants' infringement and unfair competition and to account for and pay to Plaintiff all gains, profits and advantages derived by Defendants, from said infringements, and that such award for damages be trebled due to the willful and wanton nature thereof;

(e)    For a judgment requiring that Defendants pay Plaintiff for the costs of this action and the for Plaintiff's reasonable attorneys fees;

(f)    For pre- and post-judgment interest according to law; and

(g)    For such other and further relief as the Court may deem just and proper.


DATED:    New York, New York
                August 24, 2012


                          GUSY VAN DER ZANDT LLP


By: _____
            Martin F. Gusy (MG2504)
            Matthew J. Weldon (MW9836)
            261 Madison Avenue, 15th Floor
            New York, New York 10016
            (646) 502-8066

            *Attorneys for Plaintiff MPD Accessories B.V.*

## Exhibit A

AGREEMENT FOR THE ASSIGNMENT OF IP-RIGHTS

**THE UNDERSIGNED:**

(1)    MPD ACCESSORIES B.V., a private company with limited liability incorporated under the laws of The Netherlands, having its registered office and place of business in (1041 BC) Amsterdam, at the Dukdalfweg 49, hereinafter to be referred to as: '**MPD**', for these purposes duly represented by Mr. M.S.F. Menke, director;

and

(2)    WHISTON & WRIGHT LIMITED, a limited liability company organised under the laws of the United Kingdom, having its registered office and place of business in London W3 ORG, at Long Island House, Block A, 1-4 Warple Way, hereinafter to be referred to as: '**W&W**', for these purposes duly represented by Mr. [                    ], director;

MPD and W&W hereby collectively referred to as: the '**Parties**';

**WHEREAS:**

(A)    MPD is an international company, which is specialised in fashion accessories. More specific, MPD (purchases) designs, produces and trades in scarf-, hats and other accessories.

(B)    W&W is an English textile design studio, which has developed a fabric with a stripe pattern and print with design number STNC8033 (hereinafter: the '**Design**'). Detail enlargement of the Design is depicted in **Annex 1** of this agreement.

(C)    On 8 February 2011 MPD purchased the Design from W&W. A copy of the invoice of this sale is attached as **Annex 2** to this agreement.

(D)    Parties express their intention that W&W duly assigned and transferred all and full intellectual property rights in and delivered the Design to MPD and that MPD acquired these intellectual property rights in and to the Design from W&W.

(E)    W&W wishes to validate the assignment to MPD of its intellectual property rights in the Design with retroactive affect to the date of delivery on the following terms and conditions.

**HEREBY AGREE THE FOLLOWING:**

**1      Assignment**

1.1    W&W hereby assigns and sells to MPD all intellectual property rights in and to the Design with retroactive affect to the date of delivery of the Design, which assignment is hereby accepted by MPD.

1.2    This assignment constitutes a transfer to MPD of the full and sole ownership of the intellectual property rights in and to the Design, including, but not limited to, all rights to reproduce, adapt, distribute and license, in any form whatsoever without limitation.

1.3    If the assignment and transfer of such intellectual property rights requires a further deed, W&W hereby already for now unconditionally and irrevocably authorises MPD to have any

such deed prepared and executed on behalf of W&W at any time in the future, without prejudice to W&W's obligation to give its co-operation to the assignment and transfer of such rights at MPD's first request, without being able to impose any conditions.

1.4 This assignment includes, as the case may be, the right to sue for damages and other remedies in respect of any infringements of the intellectual property rights which may have occurred prior to the date hereof.

**2 Moral Rights**

2.1 W&W hereby waives towards MPD all its moral rights in the Design insofar as the applicable regulations allow such waiver.

**3 Indemnity**

3.1 W&W represents and warrants that:

- the Design is the result of own efforts and has not been derived from the design(s) of others;

- it is the sole owner of the intellectual property rights in and to the Design and that all these rights are unencumbered and free of any claims by third parties;

- that it is entitled to sell and assign the intellectual property rights in and to the Design with retroactive affect to the date of delivery of the Design and has not granted or will grant any rights through licenses or otherwise to third parties with respect to the intellectual property rights in the Design.

3.2 W&W indemnifies and holds MPD harmless against any claims of others if the commercial exploitation of the Design turns out to infringe, in any manner whatsoever, the (intellectual property) rights of others.

3.3 Upon request W&W will provide MPD with all assistance to maintain and defend the latter's rights against others.

**4 Purchase price**

4.1 In consideration of the assignment of the intellectual property rights in and to the Design the purchase price is included in the agreed sum as invoiced by W&W to MPD as specified in Annex 2 to this agreement.

**4 Term**

4.1 This agreement shall be in effect from the date that both Parties have signed this agreement and has a perpetual duration.

4.2 Parties hereby explicitly waive their right to terminate this agreement for cause ("*ontbinding*") in accordance with the Dutch Civil Code.

**5**     **Applicable Law and Disputes**

5.1     This agreement and any subsequent agreements arising therefrom and any additions and changes will be governed by Dutch law.

5.2     Any disputes arising from this agreement or any subsequent agreements will be submitted in first instance to the competent court of Haarlem.

**6**     **Miscellaneous**

6.1     This agreement can only be modified after written approval by both Parties. Notifications between Parties pursuant to this agreement shall be made in writing.

6.2     This agreement and the Annexes 1 and 2 constitute the entire agreement between the Parties pertaining the subject matter hereof and supersede all correspondence, prior agreements, negotiations, discussions and other communication between the Parties prior to this agreement, whether oral or written in connection with the subject matter hereof, except as explicitly set forth herein.

Drawn up and agreed in duplicate in _Amsterdam_ on _3_ May 2012.

MPD ACCESSORIES B.V.          WHISTON AND WRIGHT LIMITED

Mr. _M.S.T. Menke_          ~~Mr MS~~ C. WHISTON

Director          Director

MPD Accessories, Dukdalfweg 49
1041 BC Amsterdam, The Netherlands
Tel +31 (0)20 480 81 82  Fax +31 (0)20 480 81 88
e-mail: info@mpd-acc.nl • www.mpd-acc.com
Chamber of Commerce Nr. 33242373 • VAT Nr. NL80.10.69.245.B01

**ANNEX I**



MPD Accessories, Dukdalfweg 49
1041 BC  Amsterdam, The Netherlands
Tel +31 (0)20 480 81 82  Fax +31 (0)20 480 81 88
e-mail: info@mpd-acc.nl • www.mpd-acc.com
Chamber of Commerce Nr. 33242373 • VAT Nr. NL80 10 69 245 B01

**ANNEX II**



MPD Accessories, Dukdalfweg 49
1041 BC  Amsterdam, The Netherlands
Tel +31 (0)20 480 81 82  Fax +31 (0)20 480 81 88
e-mail: info@mpd-acc.nl • www.mpd-acc.com
Chamber of Commerce Nr. 33242373 • VAT Nr. NL80 10 69 245 B01

7. 02. 11



**INVOICE**

10208

**FROM:**   Whiston and Wright
Long Island House
Block A
1-4 Warple Way
London
W3 0RG

Tel:       +44 (0)20 8749 3506
Email:    sales@whistonandwright.com

VAT No:   GB 503 4955 55

**TO:** MPD
Dulledalfweg 49
1061 BC Amsterdam
HOLLAND.

Client VAT No:

| No. | Design Reference | Cost |
|-----|------------------|------|
| 8 | CA 861 d.<br>STNC 8033 d.<br>STHP 5097 d.<br>EB 850.<br>STSG 9136 d.<br>SC 1122 A.<br>LR 1254.<br>STNC 6921 d | ~~3200~~<br>400 euros. |

| Boekstuknr. | Crediteurnr. | Periode | Firma |
|-------------|--------------|---------|-------|
| 33042 | 900115 | 2 | |
| Fact. controle | 14 FEB 2011 | | Betaling 4/2 V.4/3 |
| Grootboek 100202 | | D | CR |

For no extra fee, we endeavour to supply a digital file for computer-generated designs.This is not guaranteed and we accept no liability for failure to supply this service
Designs on this invoice may incorporate images from "copyright free" sources. Vintage fabrics or bought trims not covered by our transfer or copyright.

**Signature:**

**Print Name:**

Pay by wire transfer to Whiston and Wright.
Bank: National Westminster Bank, 22 King's Mall, Hammersmith, London W6 0QD, England
Acc. No. 41785118          Sort Code: 60 80 08
Swift: NWBKGB2L          IBAN: GB 76NWBK 60500641785118
US Dollar Payments
Account 140801/00310711  NXH IKHCBUUS001

| | |
|---|---|
| **Total Net** | 3200.00 |
| **Total VAT** | |
| **Total Amount Due** | 3200.00 £ |

**Payment Terms: 30 Days Net**
All bank charges must be paid by the purchaser