UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

MPD ACCESSORIES B.V.,

            Plaintiff,

      -v-                                   No.  12 Civ. 6501 (LTS)(KNF)

URBAN OUTFITTERS et al.,

            Defendants.
--------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

        In this copyright infringement action, Plaintiff MPD Accessories B.V. ("MPD" or "Plaintiff") sues Defendant Urban Outfitters, Inc. ("Urban Outfitters") and Defendant GMA Accessories Inc. d/b/a Capelli New York ("GMA") (collectively, "Defendants"), alleging that Defendants have infringed upon Plaintiff's exclusive right to reproduce and sell scarves decorated with certain designs.  Plaintiff moves, pursuant to Federal Rule of Civil Procedure 56, for summary judgment, arguing that it has valid copyrights in both designs and that Defendants have infringed upon those copyrights by producing and selling scarves printed with the two designs.[1]  Plaintiff seeks the recovery of Defendants' profits as damages; a permanent injunction against Defendants; and an order directing Defendants to surrender the remaining scarves to MPD.  The Court has subject matter jurisdiction of the case pursuant to 28 U.S.C. §§ 1331 and 1338(a).  Having reviewed carefully the parties' submissions and arguments, the Court grants Plaintiff's motion for summary judgment in its entirety.

---

[1]    Plaintiff has withdrawn its unfair competition claim.  (<u>See</u> Pl.'s Mem. Supp. Mot. Summ. J. at 24.)

BACKGROUND[2]

MPD is an Amsterdam-based accessories company that creates or purchases original textile designs for products that it sells to the global market. (Menke Aff. ¶ 1.) GMA buys and markets accessories and clothing in the United States and internationally. Urban Outfitters sells clothing and accessories around the world. On or about February 7, 2011, MPD acquired a stripe textile pattern from Whiston & Wright (W&W), a United Kingdom textile design studio. (Pl.'s 56.1 St. at ¶ 1.) In March 2011, utilizing that pattern, Corrine Kamp, a textile designer employed by MPD, created a design of "brightly colored block stripes, variegated color combinations and bold and small stripes, interlinking horizontal and vertical stripes and parallel and perpendicular striping" (the "Stripe Design"), from which MPD produced a scarf. (Id. at ¶ 2.) By an agreement dated May 3, 2012 (the "W&W Agreement"), Whiston & Wright acknowledged that MPD had purchased the original stripe design ("Original Design") on February 8, 2011, and purported to assign to MPD "all intellectual property rights in and to the [Original] Design with retroactive effect to the date of delivery of the Design." (Menke Aff., Ex A ¶ 1.1.) The W&W Agreement further provided that the assignment "constitute[d] a transfer to MPD of the full and sole ownership of the intellectual property rights in and to the [Original] Design, including, but not limited to, all rights to reproduce, adapt, distribute and license, in any form whatsoever without limitation." (Id. ¶ 1.2.) Whiston & Wright represented and warranted that "it [wa]s the sole owner of the intellectual property rights in and to the [Original] Design and that all these rights are unencumbered and free of any claims

---

[2]     Facts recited as undisputed are identified as such in the parties' statements pursuant to S.D.N.Y. Local Civil Rule 56.1 or drawn from evidence as to which there is no non-conculsory contrary factual proffer. Citations to the parties' respective Local Civil Rule 56.1 Statements ("Def.'s 56.1 St." or "Pl.'s 56.1 St.") incorporate by reference the parties' citations to underlying evidentiary submissions.

by third parties." (<u>Id.</u> ¶ 3.1.)   MPD's designer, Ms. Kamp, also created an "oblong double face lace-wool star [design] scarf" with stars that vary in size and spacing on top of a stylized floral pattern (the "Star Design") in March 2011, without using any pre-existing pattern.  (Pl.'s 56.1 St. ¶ 6, <u>See</u> Menke Aff., Ex. J.)

       The Star Design was approved by MPD and first manufactured for MPD by Tongshi Factory in China in April 2011.  (Pl.'s 56.1 St. ¶ 7.)   Ms. Kamp stated, that, in accordance with her practice, she gave Tongshi Factory her designs to use for manufacturing purposes.  (<u>See</u> Gusy Decl., Ex. B., Kamp Dep. Tr. 63:12-25, 64:2-9.)   In addition, e-mails were sent between Ms. Kamp and employees of Tongshi Factory discussing manufacturing and formatting adjustments.  (<u>See</u> Mizra Decl, Ex. A.)   MPD originally published and distributed the Star Design in Europe in April 2011, and the Stripe Design in May 2011.  (Menke Aff. at ¶¶ 5-7, 11-13.)   MPD has not licensed the Stripe Design or Star Design to Urban Outfitters, GMA, or to any other United States company.  (Menke Aff. ¶¶ 8, 14.)

       George Altirs, CEO of GMA ("Mr. Altirs"), testified that he went to Tongshi Factory, where he saw scarves with a stripe design and with a star design.  (Gusy Decl., Ex. A, Altirs Dep. Tr. 46:8-10, 21-24.)   Mr. Altirs represents that the scarves were presented to him as the work product of Tongshi Factory and that he determined, based on his own examination, that the scarves were not creative enough to qualify for any copyright protection since they consisted of basic shapes.  (<u>See</u> <u>Id.</u> Altirs Dep. Tr. 51:4-16, 21-25.)   Between 2011 and 2012, Tongshi Factory sold to GMA scarves with the same or a strikingly similar Stripe Design as MPD's scarves and with the same or a strikingly similar Star Design as MPD's scarves.  (Pl.'s 56.1 St. ¶¶ 19-20; <u>see</u> <u>also</u>, Feb. 11, 2013, Gusy Decl., Ex. C.)   GMA then re-sold 4,008 scarves with the Stripe Design and 5,083 scarves with the Star Design.  (<u>Id.</u>)   Urban Outfitters purchased from

GMA 3,200 units of scarves with the same or a strikingly design to the Stripe Design scarves and 5,059 units of scarves with the same or a strikingly similar design to MPD's Star Design scarves. (Pl.'s 56.1 St. ¶¶ 19-20; Kim Decl. Opp. at Ex. 2.)

MPD contends that, in May and June 2012, it discovered that Urban Outfitters' online store was selling scarves that were the same as or strikingly similar to the Stripe Design. (Pl.'s 56.1 St. ¶ 10.)  In May 2012, GMA was informed that the United Kingdom's branch of Urban Outfitters UK Ltd. had received a cease and desist letter from Plaintiff related to sales of scarves with the Stripe Design.  (Id. ¶ 12.)  On June 21, 2012, MPD's attorneys purchased a scarf with a design that they contend was identical or nearly identical to the Star Design from Urban Outfitters' online store.  (Id. ¶ 13.)  On July 6, 2012, MPD's attorneys sent Urban Outfitters another cease and desist letter – this time in connection with the Star Design.  (Id. ¶ 14.)  On July 18, 2012, MPD's attorneys purchased two scarves from the Urban Outfitters store located at 521 Fifth Avenue, New York, New York, with designs that were identical or nearly identical to both the Stripe Design and Star Design.  (Id. ¶ 15.)  On October 1, 2012, MPD's attorneys purchased from Defendant GMA's retail store located at 475 Fifth Avenue, New York, New York a scarf with a pattern identical or nearly identical to the Star Design.  (Id. ¶ 18.)  Defendants do not dispute that the scarves they purchased from Tongshi Factory and offered for sale are identical or at least strikingly similar to MPD's Stripe Design and Star Design scarves.

DISCUSSION

Summary judgment is appropriate if the movant can show that there is no genuine dispute as to a material fact and that "the moving party is entitled to judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "Only disputes over facts

that might affect the outcome of the suit under the governing law will properly preclude the

entry of summary judgment." Id. at 248.  When considering a motion for summary judgment,

"[a]s a general rule, all ambiguities and inferences to be drawn from the underlying facts should

be resolved in favor of the party opposing the motion, and all doubts as to the existence of a

genuine issue for trial should be resolved against the moving party."  Binder v. LILCO, 933 F.2d

187, 191 (2d Cir. 1991) (internal quotations and citations omitted).  "Viewing the evidence

produced in the light most favorable to the nonmovant, if a rational trier could not find for the

nonmovant, then there is no genuine issue of material fact and entry of summary judgment is

appropriate." Id.  However, a party cannot survive a motion for summary judgment based

merely on speculation or conjecture because "[m]ere conclusory allegations or denials . . . cannot

by themselves create a genuine issue of material fact where none would otherwise exist."

Comm. Trade USA, Inc., v. INTL FCStone, Inc., No. 13 Civ 3998, 2014 WL 787912, at *3

(S.D.N.Y. Feb. 27, 2014) (internal quotation marks and citation omitted).


Ownership of the Designs

Validity of Assignment from Whiston & Wright

Defendants assert in a conclusory fashion that, because the W&W Agreement, on

which Plaintiff relies for its assertion of ownership of the Original Design underlying its Stripe

Design, was executed a year after Plaintiff's acquisition of the Original Design, it is ineffective

as a retroactive transfer of rights.  Defendants cite no law in support of this argument, which is

patently inconsistent with the parties' agreement as spelled out on the face of the W&W

Agreement, the authenticity of which is not challenged.  Similarly, Defendants assert that the

assignment provision of the W&W Agreement is invalid because it is not signed by an individual

designer. This objection is also ineffectual, as the W&W Agreement includes Whiston & Wright's representation that it owned all of the necessary rights, and Defendants have proffered no evidence that any other individual or entity claims ownership of such rights.

The party opposing a motion for summary judgment "must offer 'concrete evidence from which a reasonable juror could return a verdict in his favor.'" <u>Vargas v. Transeau</u>, 514 F. Supp. 2d 439, 442 (S.D.N.Y. 2007) (internal quotation marks and citation omitted). "The nonmovant may not rely on conclusory allegations or unsubstantiated speculation, but must support the existence of an alleged dispute with specific citation to the record materials." <u>Hughes v. U.S.</u>, No. 12 Civ 5109, 2014 WL 929837, at *3 (S.D.N.Y. Mar. 7, 2014) (internal quotation marks and citation omitted). Defendants do not cite any evidence or make any supported legal arguments in aid of their assertion that the assignment is invalid. Accordingly, the Court finds that Defendants have not raised a genuine issue as to the validity of Plaintiff's ownership of the rights transferred by Whiston & Wright.

<u>Whether Tongshi Factory is an Author of the Stripe or Star Designs</u>

Solely on the basis of references in the above-described emails to samples and design alterations in connection with Tongshi Factory's fabrication of Stripe Design and Star Design scarves for MPD, Defendants allege that Tongshi Factory is the sole or joint author of both the Stripe Design and the Star Design. "The non-moving party must [,however,] do more than simply show there is some metaphysical doubt as to the material facts" and "may not rely on conclusory allegations or unsubstantiated speculation." <u>Vargas</u>, 514 F. Supp. 2d. at 442 (internal quotation marks and citations omitted).

The Copyright Act defines a "joint-work" as "a work prepared by two or more

authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." See 17 U.S.C.S. § 101 (LexisNexis 2011). The doctrine is not, however, meant to eliminate sole authorship in situations in which another party has merely "rendered some form of assistance." See Childress v. Taylor, 945 F.2d 500, 504 (2d Cir. 1991). The Second Circuit has established a two-part test for joint authorship: "each putative co-author must have (1) intended, at the time of creation, to be a co-author and (2) made independently copyrightable contributions to the work." Maurizio v. Goldsmith, 84 F. Supp. 2d 455, 465 (S.D.N.Y. 2000). "[O]nly tangible forms of expression are protected by the Copyright Act. 'Ideas, refinements, and suggestions, standing alone are not the subjects of copyright.'" Id. at 466 (citations omitted).

The email messages on which Defendants rely are insufficient to demonstrate that Tongshi Factory made any independently copyrightable contribution to the Star Design or the Stripe Design. Read in the light most favorable to Defendants, the messages suggest, at best, that Tongshi Factory suggested and changed some of the spacing and sizing of the patterns on the Star Design after receiving instructions from MPD. (See Mirza Decl., ¶¶ 5-10, Exs. A-C.) Such ideas are not protectable. See Maurizio, 84 F. Supp. 2d at 466 ("ideas and suggestions are not copyrightable"). Nor is the fact that Tongshi Factory ultimately produced patterns on textiles, rather than paper, sufficient to support independent copyrightability. L. Batlin & Son Inc. v. Snyder, 536 F.2d 486, 489 (2d Cir. 1976) ("the variations found in appellants' plastic bank were merely 'trivial' and [ ] it was a reproduction of [a public domain] metal bank made as simply as possible for the purposes of manufacture. In other words, there were no elements of difference that amounted to significant alteration or that had any purpose other than the functional one of making a more suitable (and probably less expensive) figure in the plastic

medium.").  Transforming a work from one medium to another does not necessarily create a new protectable work.  Id. at 491.

Defendants have likewise failed to produce evidence sufficient to create any issue of fact regarding the intent of the Plaintiff to credit Tongshi Factory as a joint author.  The record before this Court merely reflects communications and arrangements consistent with fabrication and production issues.  There is no evidence that Plaintiff contemplated shared design credit with Tongshi Factory, nor is there any evidence that the issue was ever brought up between the two.  Indeed, Plaintiff's designer has specifically denied any intention to share ownership.  (See Gusy Decl., Ex. B. Kamp Dep. Tr. 66:16-25. ) ("It is not up to the manufacturer to change the design . . . It is my testimony they [Tongshi Factory was] not allowed to make any choices in that regard [i.e., choices as to the spacing and shape of the designs].")  Defendants' speculation at this post-discovery stage is insufficient to frame an issue of fact.

The undisputed facts of record thus establish that the Stripe Design and the Star Design are both copyrightable and that Plaintiff owns both designs.  The Court therefore turns to the second element of the copyright infringement cause of action – the unauthorized copying of Plaintiff's protected material.

Copyrightability of The Stripe Design and Star Design

The Berne Convention Implementation Act allows owners of unregistered foreign copyrights from Berne Convention signatory nations to bring claims of copyright infringement in United States courts.  See, 17 U.S.C. §§ 101, 104, 411; see also Sadhu Singh Hamdad Trust v. Ajit Newspaper Advertising, Marketing and Communications, Inc., 503 F. Supp. 2d 577, 584 (S.D.N.Y. 2007) ("the Berne Convention does not require the owner of a foreign copyright to

register in the United States before seeking redress for infringement of works originating in foreign nations . . . that are signatories to that convention").[3]

To sustain a cause of action for copyright infringement, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of work that are original." Feist Publications Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991). "The sine qua non of copyright is originality. To qualify for copyright protection, a work must be original to the author." Id. at 345. Defendants claim that MPD's Stripe and Star Designs are not copyrightable because they are comprised of basic shapes and colors, which are insufficiently original. Basic shapes, however, even if not entitled to copyright protection on their own, become copyrightable when uniquely situated. See, e.g., Keeling v. New Rock Theater Productions, LLC, No. 10 Civ 9345, 2013 WL 918553, at *2 (S.D.N.Y. Mar. 11, 2013) ("Thus, regardless of whether the . . . script is, in fact, exclusively composed of unprotectable elements, [plaintiff's] creative contribution, and thus her copyright, is in the original way in which the author has, selected, coordinated and arranged the elements of his or her work.") (internal quotation marks and citation omitted).

When it comes to showing that something is copyrightable "[t]he standard of originality is low, but it does exist." Feist, 449 U.S. at 362. "Only an unmistakable dash of originality need b[e] demonstrated, high standards of uniqueness in creativity are dispensed with." Odegard, Inc. v. Costikyan Classic Carpets, Inc., 963 F. Supp. 1328, 1355 (S.D.N.Y. 1997). The work must have some minimal originality and be independently created, i.e., not

---

[3]    The Netherlands and the United States are both signatories to the Berne Convention. See Cordon Art B.V. v. Walker, No. Civ 95-0863, 1996 WL 672969, at *6 (S.D. Cal Aug. 19, 1996) (stating that the Netherlands and the United States are signatories to the Berne Convention).

copied from someone else's work.  Feist, 499 U.S. at 345 (1991).  Moreover,  "fabric designs,

such as the artworks on . . . sweaters [or, in this case, scarves], are considered 'writings' for

purposes of copyright law and are accordingly protectible."  Knitwaves, Inc. v. Lollytogs Ltd.

(Inc.), 71 F.3d 996, 1002 (2d Cir. 1995) (citations omitted).  "Even if the motifs themselves are

not copyrightable, the designer of a fabric may copyright its selection and arrangement of motifs,

or its combining of motifs."  Odegan, 963 F. Supp. at 1335 (comparing the differences between

two carpet designs).  For example, in Prince Group, Inc. v. MTS Products, the court found a

polka dot pattern copyrightable because the polka dots were irregularly shaped, were not average

circles, and were shaded.  Prince Group, Inc. v. MTS Products, 967 F. Supp. 121, 125 (S.D.N.Y.

June 27, 1997).

       Here, MPD's Stripe Design includes stripes of different widths and lengths, in

different directions, in different colors and with irregular spacing.  (See Menke Aff., Exs. B-C.)

The Star Design includes different sized stars placed at irregular intervals throughout the design

on one side of the scarf and, on the other side of the scarf, a repetitive stylized floral pattern.

(Id., Ex. J.)  There is no genuine dispute that the color, size, arrangement and repetition of the

shapes were all the aesthetic choices of the Plaintiff.  Their unique combination can be protected

as a whole.  Accordingly, the Court concludes that both of MPD's designs are sufficiently

original to merit copyright protection.

Unauthorized Copying

       "[C]opying is comprised of two requirements: actual copying and improper

appropriation."  See Webb v. Stallone, 910 F. Supp. 2d 681, 684 (S.D.N.Y. 2012) (internal

quotation marks and citations omitted).  "Since it is rarely possible to establish copying by direct

evidence, a plaintiff can prove copying by showing (1) that the defendant had access to the work in question, and (2) that plaintiff's and defendant's works are substantially similar." In Design v. Lauren Knitwear Corp. 782 F. Supp. 824, 830 (S.D.N.Y. 1991). "The level of similarity needed to establish copying is now commonly referred to as probative similarity." Webb, 910 F. Supp. 2d at 684 (internal quotation marks and citations omitted).

This is the rare case in which the factual predicate for copying is not disputed – as noted above, Defendants concede that they purchased and sold scarves from Tongshi Factory that are at least strikingly similar to the scarves manufactured by Tongshi Factory from Plaintiff's designs.[4]

### Striking Similarity

Where works are strikingly similar, separate proof of access for copying is unnecessary. "Striking similarity exists when two works are so nearly alike that the only reasonable explanation for such a great degree of similarity is that the later was copied from the first." Gal v. Viacom Intern., Inc., 518 F. Supp. 2d 526, 537 (S.D.N.Y 2007). "Two works are considered strikingly similar if creation of one is so dependent on the other as to preclude the possibility of independent creation." Id. at 543 (internal quotation marks and citations omitted). "The court's task is to apply logic and experience to determine if copying is the only realistic basis for the similarities at hand." Id. at 537 (citing Vargas, 514 F. Supp. 2d at 443). "Courts have found that two fabric designs do not have to be identical to be strikingly similar." Prince

---

[4]   Plaintiff asserted in its notice of motion for summary judgment that Defendants agreed that their scarf products "are at least strikingly similar" to Plaintiff's Stripe Design and Star Design.  (Docket entry no. 137.)  Defendants, in opposing the motion, argued that Tongshi Factory created the designs but did not dispute Plaintiff's assertion that the scarf designs are strikingly similar if not identical.

Group, 967 F. Supp. at 126.  If the court finds that "no reasonable juror could find that the defendants did not copy the plaintiff[]'s protected works" then the works are strikingly similar. CJ Products LLC v. BTC Enterprises LLC, No. 10 Civ 5878, 2012 WL 1999829, at *5 (S.D.N.Y. June 1, 2012).

Because Defendants concede that their scarves are strikingly similar to Plaintiff's works, the second element of Plaintiff's copyright infringement cause of action is established and Plaintiff is entitled to a judgment as a matter of law.  The Court now turns to the question of remedies.

Damages

Damages in copyright infringement cases are intended to insure that the infringer does not benefit from any wrongdoing.  See On Davis v. The Gap Inc., 246 F.3d 152, 159 (2d Cir. 2001).  The Copyright Act allows copyright owners to recover the "copyright owner's actual damages and any additional profits of the infringer, as provided by subsection (b)."  17 U.S.C.S. § 504(a)(1) (LexisNexis 2011).

MPD seeks an award of Defendants' profits from the infringement.  To calculate recoverable profits, "the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work."  Id.  The plaintiff must show that there is a causal connection between the alleged infringement and the claimed gross revenues.  See e.g., On Davis 246 F.3d at 159-60 ("Davis submitted evidence that . . . the corporate parent of the Gap stores realized net sales of $1.668 billion . . .  The district court considered this evidence inadequate to sustain a judgment in the plaintiff's favor because the

overall revenues of the Gap, Inc. had no reasonable relationship to the act of alleged

infringement. . . . we agree with the district court that it was incumbent on Davis to submit

evidence at least limited to the gross revenues of the Gap label stores [because the infringement

was limited to Gap label stores and perhaps also to eyewear or accessories].").  Defendants can

only deduct costs that relate to the infringing works.  See In Design, 782 F. Supp. at 832.

"Defendant's overhead is also deductible, but only if the defendant can show what portion of

overhead contributed to the production and sale of the infringing products."  Id.


Gross Revenue for Each Defendant

"[G]ross revenue under the statute means gross revenue reasonably related to the

infringement, not unrelated revenues."  On Davis, 246 F.3d at 160 (internal quotation marks and

citation omitted).  The defendant's gross revenue may be calculated based on invoices provided

by the defendant.  Miroglio S.P.A. v. Conway Stores, Inc., No. 05 Civ. 00121, 2008 WL

4600984, at *5 (S.D.N.Y. Oct. 15, 2008) ("These figures were taken from Plaintiff's

calculations, which were based on invoices supplied by Defendant").

Here, Urban Outfitters purchased 3,200 units of Stripe Design scarves for $4.75

per unit, totaling $15,200.  (Pl.'s 56.1 St. ¶ 19; Kim Decl. Opp. at Ex. 2.)  Urban Outfitters sold

2,852 units of the Stripe Design for an average of $14.768 per unit, totaling $42,118.  (Id.; see

also Urban Outfitters Decl. ¶ 7.)  Urban Outfitters purchased 5,059 units of Star Design scarves

for an average of $4.83 per unit, totaling $24,432.50.  (Pl.'s 56.1 St. ¶ 20; Kim Decl. Opp. at Ex.

2.)  Urban Outfitters sold 1,986 units of the Star Design scarves for an average of $21.35 per

unit, totaling $42,404.  (Id.; see also Urban Outfitters Decl. ¶ 6.) )  Therefore, Urban Outfitters'

total gross revenue from sales of the Stripe Design and Star Design scarves is $84,522.

GMA sold 4,008 units of the Stripe Design for total revenue of $17,614 and 5,083 units of the Star Design for total revenue of $24,496, and so, from its sales of the two scarf designs, GMA made $42,110 in total revenue.  (See Pl.'s 56.1 St. ¶¶ 19-20; Oct. 25, 2013, Gusy Decl., Ex. B; see also Decl. GMA Accessories, ¶¶ 4-5.)

Deductible Costs of Goods Sold

The costs of production and sale of the infringing goods may be deducted from gross revenue in computing an award of profits.  See Hamil America Inc. v. GFI, 193 F.3d 92, 104 (2d Cir. 1999) ("[p]ut another way, the infringer's profits are calculated as the gross sales of infringing goods minus the costs that the infringer proves are attributable to the production and sale of those goods").  Through purchase orders and invoices, the Defendants have provided information sufficient to calculate such costs here.  Urban Outfitters spent $15,200 to purchase 3,200 units of Stripe Design scarves from MPD.  (Pl.'s 56.1 St. ¶ 19; Kim Decl. Opp. at Ex. 2.) Urban Outfitters spent $24,432.50 to purchase 5,059 units of Star Design Scarves.  (See Kim Decl. Opp. at Ex. 2.)  Urban Outfitter's average cost per unit of the Stripe Design scarves was $4.75 and its average cost per unit of the Star Designs scarves was $4.83.  When these figures are multiplied by the number of infringing scarves actually sold, the total for the Stripe Design scarves is $13,547 (2,852 units multiplied by $4.75 per unit) and the total for the Star Design scarves is $ 9,592.38 (1,986 units multiplied by $4.83 per unit).  Accordingly, Urban Outfitters' total cost of purchasing infringing scarves was $23,139.38.  This figure is properly deducted from Urban Outfitters' $84,522 gross revenues from the infringing scarf sales, for a net profit of $61,382.62.

GMA has presented sales figures which show that it spent $6,172 to purchase

4,008 units of Stripe Design scarves at an average price of $1.54 per unit and $10,405 to

purchase 5,083 units of Star Design scarves at an average price of $2.047 per unit.  (See Feb. 11,

2013 Gusy Decl., Ex. C at 3.)[5]  GMA's total cost of purchasing the infringing scarves was thus

$16,577.  This figure is properly deducted from GMA's gross revenue of $42,110 from the

infringing scarf sales, for a net profit of $25,533.


        Overhead

        The Defendants contend that their overhead and related expenses should also be

deducted from their total gross revenue in computing the award of profits as damages.  (See

GMA Decl. ¶ 3; Urban Outfitters Decl. ¶ 5.)  The appropriate overhead may be included in a

defendant's deductible costs.  See, e.g., Hamil, 193 F.3d at 104-5 ("The court thus concluded

that certain categories of general overhead expenses . . . were appropriately deducted from gross

revenue").  "The first step is to determine what overhead expense categories (such as rent,

business, entertainment, personnel and public relations) are actually implicated by the production

of the infringing good."  Hamil, 193 F.3d. at 105.  "[O]verhead which does not assist in the

production of the infringement should not be credited to the infringer; that which does, should

be."  Banff Ltd. v. Express Inc., 921 F. Supp. 1065, 1070 (S.D.N.Y. 1995).  "The infringer has

the burden of offering a fair and acceptable formula for allocating a given portion of overhead to

the particular infringing items at issue."  Hamil, 193 F.3d at 105 (internal quotation marks and

---

        [5]      Plaintiff's calculations regarding the average price and amount of scarves that GMA
        purchased from Tongshi Factory are marginally different from GMA's calculations.
        (See Pl.'s Mem. Supp. Summ. J. at 20; see also Pl's 56.1 St. ¶¶ 19-20.)  Since the
        Court cannot determine the basis for Plaintiff's calculation of the average price per
        unit of the scarves purchased, the Court adopts GMA's numbers and calculations in its
        analysis.

citation omitted).  "Every infringer shoulders the burden of demonstrating a sufficient nexus

between each expense claimed and the sales of the unlawful goods."  Id. at 107 (internal

quotation marks and citation omitted).  If the expenses do not relate to producing or selling the

infringing products, they cannot be included in the overhead calculation.  In Design, 782 F.

Supp. at 834.

       Defendants have not provided any proof of the nexus between the specific

infringing products and their purported overhead.  Rather, Defendants proffer in a conclusory

fashion that all but 2.301% of GMA's net sales, and all but 7.48% of Urban Outfitters' net sales,

in each case companywide, are consumed by overhead expenses, and argue that Plaintiff's

damages award should therefore be limited to those specified percentages of the net sales figures

for the infringing scarves.  (See GMA Decl. ¶ 3; Urban Outfitters Decl. ¶ 5.)  In addition, Urban

Outfitters asserts that, at trial, the correct overhead multiplier will be proven by expert

testimony.  (Urban Outfitters Decl.¶ 5.)

       Federal Rule of Civil Procedure 56 imposes the obligation of producing evidence

sufficient to carry a party's burden on a summary judgment motion.  Here, the Defendants'

evidentiary proffers of net income calculations are not sufficiently tied to specific general

overhead categories, nor to overhead incurred in connection with the infringing activities.

Defendants have failed to sustain their evidentiary burden with respect to allocable overhead,

and therefore their claimed overhead costs will not be deducted in calculating Plaintiff's

damages award.

Permanent Injunction

       Plaintiff MPD also seeks a permanent injunction prohibiting Defendants from

(i) [u]sing the MPD copyright protected Stripe Design and Star Design or any reproduction, counterfeit, copy or colorable imitation of the MPD copyright protected Stripe Design and Star Design in connection with the manufacturing, reproduction, distribution, offering for sale and/or sale of merchandise not the genuine products of MPD; and (ii) Shipping, delivering, distributing, returning, transferring or otherwise moving, or disposing of in any manner, including scarves, bearing the MPD Stripe Design or Star Design, or any reproduction, counterfeit, copy or colorable imitation of same[.]

(Pl.'s Mem. Supp. Mot. Summ. J. at 25.)

"'[A]n injunction does not automatically follow a determination that a copyright has been infringed . . . .'" SimplexGrinnell LP v. Integrated Systems & Power, Inc., 642 F. Supp. 2d 167, 196 (S.D.N.Y. 2009) (citation omitted). The Second Circuit applies the four-part test for injunctive relief laid out in eBay Inc. v. MercExchange LLC, 547 U.S. 388, 290 (2006).

Under that standard, injunctive relief should issue where a plaintiff has established a likelihood of success on the merits in seeking a preliminary injunction, or has actually succeeded on the merits of seeking a permanent injunction, [by showing] that: (1) plaintiff is likely to suffer irreparable injury in the absence of an injunction, (2) remedies at law, such as monetary damages, are inadequate to compensate plaintiff for that injury; (3) the balance of the hardships tips in the plaintiff's favor and (4) the public interest would not be disserved by the issuance of a preliminary injunction.

EMI April Music Inc. v. 4MM Games, LLC, No. 12 Civ 2080, 2014 WL 325933, at *9 (S.D.NY. Jan. 13, 2014) (citation omitted).

On October 3, 2012, this Court granted MPD's request for a temporary restraining order ("TRO") to stop Defendants from selling the allegedly infringing scarves. This Court found that "the requisite demonstration of irreparable harm [had been made] insofar as the significant undercutting of [Plaintiff's] price points hampers its ability to build its customer base and good[will] with respect to these products and potentially other products in the United States." (Oct. 3, 2012 Tr. 25:15-19.) As for the second prong, "[g]enerally, monetary damages awarded 'after the fact' do not provide an adequate remedy in a case such as

this where the actual loss caused by infringement [(goodwill)] cannot be measured." Electronic
Creation Corp. v. Gigahertz, Inc., No. 12 Civ 1423, 2013 WL 3229125, at *5 (N.D.N.Y. June
25, 2013) (citation omitted).  This Court also found, when it granted the TRO, that the balance
of the hardships tipped in the Plaintiff's favor.  (Oct. 3, 2012 Tr. 25:14.)  There is no evidence
that circumstances have changed.  Lastly, "[t]he public interest is not disserved by an injunction
as it will protect copyrights and help enforce federal law."  DISH Network L.L.C. v.
DelVecchio, 831 F. Supp. 2d 595, 601 (W.D.N.Y. Oct. 7, 2011).

   Thus, MPD has established a need for a permanent injunction and it is granted.


Forfeiture of Remaining Scarves

   Pursuant to 17 U.S.C. § 503, a plaintiff can request disposal or forfeiture of all
remaining infringing products.  See Entral Group Intern. v. Sun Sports Bar Inc,. No. 05 Civ
4836, 2007 WL 2891419, at *7 (E.D.N.Y. Sept. 28, 2007).  "The standard for granting this
request mirrors the standard for granting injunctive relief."  Hounddog Productions, L.L.C. v.
Empire Film Group Inc., 826 F. Supp. 2d 619, 633 (S.D.N.Y. Nov. 10, 2011).  Granting
forfeiture or destruction is, however, discretionary.  Entral Group, 2006 WL 3694584, at *7.
"Forfeiture is especially appropriate where the defendant retains infringing items, and the Court
seeks to prevent future infringement."  Hounddog Productions, 826 F. Supp. 2d at 633.

   MPD seeks an order requiring that all remaining infringing scarves be returned
to its office in the Netherlands.  It appears from the record that Urban Outfitters purchased
3,200 units of the Stripe Design and only sold 2,852 units and that it purchased 5,059 units of
the Star Design and only sold 1,986 units.  Plaintiff contends that GMA also still has 1,044
Stripe Design scarves and 176 Star Design scarves.  The Court hereby orders that all remaining

infringing scarves be delivered to MPD's office in the Netherlands within 30 days of the date of this Memorandum Opinion and Order.  See Entral Group, 2007 WL 2891419, at *8 ("Since this Court has already recommended issuance of a permanent injunction to enjoin defendants' continuing infringement of plaintiff's protected works, this Court further recommends, for the same reasons, that an order of forfeiture be issued.").

<u>CONCLUSION</u>

Plaintiff's motion for summary judgment on its copyright infringement  claims is granted in its entirety.  Plaintiff's unfair competition claims are withdrawn.

Defendant Urban Outfitters must pay $61,382.62 to Plaintiff as damages. Defendant GMA must pay Plaintiff $25,533 to Plaintiff as damages.

Defendants, their officers, servants, agents, employees, attorneys and all persons who are in active concert or participation with any of them who receive actual notice of this Memorandum Opinion and Order are enjoined from: (i) using the MPD copyright protected Stripe Design and Star Design or any reproduction, counterfeit, copy or colorable imitation of the MPD copyright protected Stripe Design and Star Design in connection with the manufacturing, reproduction, distribution, offering for sale and/or sale of merchandise not the genuine products of MPD; and (ii) shipping, delivering, distributing, returning, transferring or otherwise moving, or disposing of in any manner, including scarves, bearing the MPD Stripe Design or Star Design, or any reproduction, counterfeit, copy or colorable imitation of the same.

Defendants must deliver all Stripe Design and Star Design scarves that are in their possession, custody or control to Plaintiff at its offices in the Netherlands within 30 days from the date of this Memorandum Opinion and Order.

This Memorandum Opinion and Order resolves docket entry number 137.

The Clerk of the Court is hereby directed to enter judgment in Plaintiff's favor and close this case.  Any motion for attorneys' fees must be brought in accordance with the timetable and procedures set forth in Federal Rule of Civil Procedure 54(d)(2).

SO ORDERED.

Dated: New York, New York
       May 30, 2014

s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge